**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MANSI REDDY BUSHIREDDY, <br><br> *Plaintiff*, <br><br> v. <br><br> TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, <br><br> *Defendant*. | Civil Action No. 25 - 1102 (SLS) <br> Judge Sparkle L. Sooknanan |

## <u>MEMORANDUM OPINION</u>

For decades, students from around the world have come to the United States to pursue and further their higher education. American colleges and universities market their programs to international students, hoping to attract the best and brightest to enrich their institutions. The student visa program brings with it a wealth of benefits to our country, and it contributes to improving the global workforce. It also comes with strict requirements for international students. Congress set out a detailed statutory scheme that governs how students may obtain an F-1 student visa and how that F-1 status, once granted, may be terminated by the Government. Yet in this case, and many others just like it, the Government acted with a now all-too-familiar disregard for the law in hastily and callously terminating the F-1 status of international students across the country.

Mansi Reddy Bushireddy is an international student who chose to pursue her studies here. She is an Indian national who has been living and studying in the United States since 2022 under a valid F-1 student visa. Last April, Ms. Bushireddy's university notified her that U.S. Immigration and Customs Enforcement (ICE) had terminated her status in the Student and Exchange Visitor Information System (SEVIS), a database that the State Department uses to track international

students. The notice letter indicated that Ms. Bushireddy had failed to maintain her F-1 status because she had been identified in a criminal records check. Ms. Bushireddy suspected that the "criminal record" was a misdemeanor shoplifting charge that had been dismissed two years earlier, but the notice letter did not say so, nor did it explain why this previously dismissed charge—if it were the record in question—justified terminating her status.

Ms. Bushireddy was not alone. She was one of thousands of international students across the country who received similar termination notices as part of ICE's new "Student Criminal Alien Initiative." All these students had virtually identical stories. After years of living and studying in the United States under valid student visas, the Government had terminated their SEVIS records without warning and with no opportunity to contest or otherwise respond to their terminations. Instead, they were told that they would need to leave the country immediately. That group of students includes a young man whose status was terminated because of an arrest for erratic driving caused by his undiagnosed and untreated bipolar disorder—a case prosecutors dismissed after learning of his medical condition. *See Obute v. U.S. Dep't of Homeland Sec.*, No. 25-cv-1147 (D.D.C.). And it includes a young father-to-be whose status was terminated shortly before his child's birth based on an alleged traffic violation—a case that prosecutors did not even charge. *See Khademi v. Noem, et al.*, No. 25-cv-1206 (D.D.C.).

With their immigration status uncertain and their lives upended, many of these students were forced to hire lawyers and file lawsuits in courts across the country. Ms. Bushireddy sued in this Court and requested emergency relief. The Court granted that request, issuing a Temporary Restraining Order last April requiring that ICE return Ms. Bushireddy's SEVIS record to active status. In granting that relief, the Court found that Ms. Bushireddy had made a clear showing that the Government's termination of her SEVIS record was unlawful, injurious, and against the public

2

interest. Indeed, the termination appeared to carry catastrophic consequences for Ms. Bushireddy—eliminating her right to live and work in the United States, subjecting her to potential arrest and deportation, and shattering a career that she had moved across the world and paid hundreds of thousands of dollars to pursue.

ICE has since returned Ms. Bushireddy's SEVIS record to active status. It has promulgated a new internal policy regarding termination of SEVIS records. And it has represented that it has no plans to re-terminate Ms. Bushireddy's record based on the dismissed shoplifting charge that prompted its earlier termination. In light of these actions, the Government asserts that this lawsuit is now moot because there is no additional relief that this Court can award Ms. Bushireddy. Ms. Bushireddy has moved for summary judgment. She argues that ICE's termination of her SEVIS record violated the Administrative Procedure Act, and that ICE may again terminate her record unlawfully without further injunctive or declaratory relief.

For the reasons that follow, the Court agrees with Ms. Bushireddy that this case is not moot and that summary judgment in her favor is appropriate.

## BACKGROUND

### A.    Statutory Background

"The F-1 visa is a non-immigrant 'Academic Student' visa that allows a foreign citizen to travel to the United States as a full-time student in an accredited educational program." *See Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *1 (D.D.C. Jan. 17, 2023); *see also* 8 U.S.C. § 1101(a)(15)(F)(i). To obtain an F-1 visa, an individual must "hav[e] residence in a foreign country which he has no intention of abandoning" and be a "bona fide student qualified to pursue a full course of study." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164, 169 (D.C. Cir. 2022) (quoting 8 U.S.C. § 1101(a)(15)(F)(i)). As a "non-immigrant" visa holder, an F-1 student may only "temporarily" remain in the United States while she is (1) pursuing

3

a full-time education at an accredited institution, 8 U.S.C. § 1101(a)(15)(F)(i); or (2) completing post-graduation practical training (also called optional practical training or OPT), 8 C.F.R. §§ 214.2(f)(5)(i), (10)(ii).

An individual may lose F-1 status before the completion of their studies for various reasons. *See* 8 C.F.R. § 214.1(d)–(g). One way they may fail to "maintain status" is if they are "convict[ed] . . . [of] a crime of violence for which a sentence of more than one year imprisonment may be imposed." *Id.* § 214.1(g). The Government may also terminate an individual's F-1 status (1) by revocation of a waiver granted under 8 U.S.C. § 1182(d)(3) or (4); (2) by introduction of a "private bill to confer permanent resident status" on the non-citizen; or (3) "on the basis of national security, diplomatic, or public safety reasons," following notification in the Federal Register. *Id.* § 214.1(d).

SEVIS is "'the definitive record' of 'status and visa eligibility' for F-1 status-holders." *Patel v. Lyons*, No. 25-cv-1096, 2026 WL 587640, at *2 (D.D.C. Feb. 27, 2026) (cleaned up) (quoting 9 Foreign Affairs Manual § 402.5-4(B)). SEVIS stores information reported by universities about their F-1 students, including each student's enrollment and graduation date, their field of study or degree program, whether they are satisfying the terms and conditions of the program, and whether they have been the subject of any disciplinary action because they were convicted of a crime. 8 U.S.C. § 1372(c); 8 C.F.R. § 214.3(g)(2)(iii); *see also* 8 U.S.C. § 1101(a)(15)(F)(i).

The Student Exchange Visitor Program (SEVP), a division of ICE, administers SEVIS. *See* U.S. Immigr. & Customs Enf't, *Student and Exchange Visitor Program*, https://www.ice.gov/sevis [https://perma.cc/JU4K-9Y7Q].[1] SEVP works to ensure that schools are properly reporting all

---

[1] The Court takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

required data so that, as relevant here, SEVIS can enable the Government to take "appropriate enforcement" action against "status violators," including by denying them benefits or removing them from the United States. *Id.*; *see also Patel*, 2026 WL 587640, at *2.

### B.    Factual Background

Ms. Bushireddy is a citizen and national of India. Bushireddy Decl. ¶ 2, ECF No. 18-1. In 2022, she was accepted to a Master's Program in Computer Science at the University of Texas at Arlington and obtained an F-1 student visa. Bushireddy Decl. ¶ 3; Compl. ¶¶ 9–10, ECF No. 1. Ms. Bushireddy graduated in 2024 and received a one-year extension of her F-1 student status to complete "post-completion optional practical training." Bushireddy Decl. ¶ 4. She later received an additional extension and is currently in the country "in lawful F-1 nonimmigrant status." Notice, ECF No. 55.

In January 2025, President Donald J. Trump issued an Executive Order titled "Additional Measures to Combat Anti-Semitism." Exec. Order No. 14,188, 90 Fed. Reg. 8847 (Jan. 29, 2025). In furtherance of that Executive Order, the Department of Homeland Security (DHS) launched a "Student Criminal Alien Initiative" to conduct mass terminations of SEVIS records. Mot. Hr'g Tr. 61:18–66:18, ECF No. 33. By the Government's own admission, this initiative was unprecedented.[2] Changing course from its previous approach to SEVIS terminations, DHS ran lists

---

[2] At a motion hearing earlier in this case, a Government witness explained that in 2024, SEVP had initiated only about six terminations. Mot. Hr'g Tr. 39:23–40:6, ECF No. 33. He further explained that DHS-initiated terminations historically only happened when there was an emergency. *Id.* at 40:12–23 (providing an example of something that would prompt SEVIS termination as getting "a call from a school" or "evidence that at a school a student was threatening to kill a teacher" or "that he had guns"). That same witness estimated that from January to early May of 2025, the Government initiated about 5,500 terminations in SEVIS. *See id.* at 42:11–19 ("Now, with this initiative, we did about 5,500 ourselves, which is obviously way more than we usually do, and that was part of the initiative. But that's obviously why we're here, because you're seeing the impact. And obviously with the lawsuits, we're all seeing the impact.").

of international students through the National Crime Information Center (NCIC) database. AR 001, ECF No. 29-5. And "[d]espite its name, the NCIC includes persons without any criminal convictions." *Patel*, 2026 WL 587640, at *3. "It includes, for example, persons who have been arrested, but not tried or convicted and . . . missing persons." *Id.*

Ms. Bushireddy appears in the NCIC database because she was arrested in April 2023 for shoplifting and charged with a Class B misdemeanor. AR 028; Bushireddy Decl. ¶ 5. Those charges were dismissed in August 2023 after Ms. Bushireddy completed "an awareness course and community service." Bushireddy Decl. ¶ 6. Ex. A. The NCIC entry for Ms. Bushireddy reflects this disposition, noting that the charges against her were "DISMISSED." AR 028.[3]

On April 4, 2025, based on Ms. Bushireddy's "criminal history," SEVP amended her SEVIS record to indicate that the record was "terminated." Watson Decl. ¶ 9, ECF No. 29-2. The next day, the University of Texas notified Ms. Bushireddy of her SEVIS record termination. Pl.'s App'x at 6–7, ECF No. 18-1. The letter reported that SEVP's reason for the termination was:

---

[3] Many stories like this one are documented in lawsuits filed in courts around the country. Many more were surely untold, as only students with the means to file lawsuits were able to do so.

In two other SEVIS cases before this Court that have since been dismissed, students appeared in the NCIC database for cases that prosecutors declined to pursue. *See Obute v. U.S. Dep't of Homeland Sec.*, No. 25-cv-1147 (D.D.C.); *Khademi v. Noem, et al.*, No. 25-cv-1206 (D.D.C). In *Obute*, the student had been living and studying in the United States since 2016. *Obute*, Pl.'s Mot. TRO, Ex. 1, Obute Aff., ECF No. 3-1. He was arrested for erratic driving while experiencing a medical emergency. *Obute*, Pl.'s Reply Supp. Mot. TRO, Ex. 1, Obute Aff. ¶ 1, ECF 11-1. At the hospital, he was diagnosed with bipolar disorder and prescribed medication. *Id.* ¶ 2. The prosecutors thus dismissed the charges, and he was never convicted of a crime. *Id.* ¶ 5; *Obute*, AR 010, ECF 27-1. In *Khademi*, the student had been living and studying in the United States since 2021. *Khademi*, Khademi Decl. ¶ 3, ECF No. 3. He was arrested for a traffic incident. *Id.* ¶ 8. The Texas Department of Public Safety declined to charge him with a crime. *Id.*; *Khademi*, AR 028, ECF No. 29. He was never formally charged, required to appear in court, or convicted of any crime. *Id.* When his university told him that his status had been terminated, he and his wife were expecting their first child in two months. *Id.* ¶¶ 7, 10.

For all these students, the Government upended their lives and inflicted immeasurable harm for no reason whatsoever. And then it appeared in courts again and again to defend its actions as lawful.

6

OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

*Id.* Before receiving the letter from her university, Ms. Bushireddy had been given no notice that her SEVIS record was being terminated. Bushireddy Decl. ¶ 7. Nor was she given any chance to respond to SEVP's decision or to contest the basis for the termination. *Id.* ¶¶ 9–10. Shortly after her SEVIS record was terminated, the State Department revoked her F-1 visa. Watson Decl. ¶ 8.

### C.    Procedural Background

On April 11, 2025, Ms. Bushireddy filed this lawsuit against the Acting Director of ICE, Todd Lyons, alleging that the agency's termination of her SEVIS record violated the Administrative Procedure Act (APA), 5 U.S.C. § 706(2). Compl. ¶ 48. Ms. Bushireddy requested a Temporary Restraining Order (TRO) enjoining ICE's termination of her SEVIS record. ECF No. 2. On April 21, 2025, the Court granted that request. ECF No. 12. On June 4, 2025, Ms. Bushireddy moved for summary judgment. Pl.'s Mot. Summ. J., ECF No. 39. The Government responded by moving to dismiss under Federal Rule of Civil Procedure 12(b)(1). Mot. Dismiss, ECF No. 41. Both motions are now ripe for review. *See* Def.'s Opp'n Mot. Summ. J., ECF No. 42; Pl.'s Reply Supp. Mot. Summ. J., ECF No. 44; Pl.'s Opp'n Mot. Dismiss, ECF No. 43; Def.'s Reply Supp. Mot. Dismiss, ECF No. 47.

### LEGAL STANDARD

"When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear [her] claims." *Hill v. U.S. Dep't of Interior*, 699 F. Supp. 3d 1, 12 (D.D.C. 2023) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); and then citing *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000)). "Because the court may not address the plaintiff's claims without subject-matter jurisdiction, a motion to dismiss under Rule 12(b)(1) [also] imposes an affirmative obligation on

the court to ensure that jurisdiction is proper." *Himex Co. v. United States*, 17 F. Supp. 3d 77, 79 (D.D.C. 2014).

In reviewing a motion to dismiss for lack of jurisdiction, courts "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (cleaned up). Courts also may, "where necessary, . . . consider the complaint supplemented by undisputed facts evidenced in the record."[4] *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citation omitted); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

"Federal Rule of Civil Procedure 56 requires a court to grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]'" *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting Fed. R. Civ. P. 56(a)). In cases brought under the APA, "the summary judgment standard functions slightly differently, because 'the reviewing court generally . . . reviews the [agency's] decision as an appellate court addressing issues of law.'" *Id.* (quoting *Henry v. Sec'y of Treasury*, 266 F. Supp. 3d 80, 86 (D.D.C. 2017)). "In other words, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency

---

[4] The Government filed the Administrative Record (AR) as an attachment to its opposition to Ms. Bushireddy's Motion for a Preliminary Injunction, ECF No. 29-5, and has also submitted various other materials. These include: a notice on April 29, 2025, that ICE promulgated a new policy concerning termination of SEVIS records along with a copy of the policy, ECF No. 20; a notice on May 2, 2025, that ICE currently "understands that [Ms. Bushireddy] is presently in lawful nonimmigrant status," ECF No. 24; and a letter dated May 13, 2025, that ICE provided to Ms. Bushireddy stating that her "SEVIS designation was reset to 'active'" and that this change was "retroactive to the date of [her earlier] termination on 4/4/2025," ECF No. 45-1.

8

action is supported' by the record 'and otherwise consistent with the APA standard of review.'" *Henry*, 266 F. Supp. 3d at 86 (quoting *Remmie v. Mabus*, 898 F. Supp. 2d 108, 115 (D.D.C. 2012)). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (cleaned up).

## DISCUSSION

The Government argues that the Court may not reach the merits of Ms. Bushireddy's APA claim because: (1) that claim is moot, (2) the Privacy Act precludes review, and (3) ICE's termination of Ms. Bushireddy's SEVIS record was not a final agency action under the APA. These arguments have been raised and rejected in courts across the country in cases challenging ICE's SEVIS terminations, including most recently by a court in this District. *See generally Patel*, 2026 WL 587640. This case is on all fours with *Patel* and the Court is persuaded by its reasoning. The Court finds that the Government has not met its high burden of establishing that the case is moot. And on the merits, it concludes that ICE's termination of Ms. Bushireddy's SEVIS record was arbitrary and capricious. Accordingly, she is entitled to summary judgment.

### A.    Mootness

The Government argues that Ms. Bushireddy's lawsuit is moot because "ICE has retroactively reactivated her SEVIS record" and offered sufficient assurances that it will not terminate her record again on the same factual basis as the prior termination. Mot. Dismiss 10–17. The Court is not convinced.

The mootness doctrine derives from Article III of the Constitution and "ensures that federal courts decide only 'actual, ongoing controversies.'" *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124,

1127 (D.C. Cir. 2024) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). The doctrine requires that courts refrain from deciding disputes if, because of intervening events, "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). Nonetheless, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* When a defendant seeks to establish that it has rendered a claim moot by voluntarily ceasing the challenged conduct, it bears a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). "After all, . . . the party may be trying to avoid judicial review only to restart [the challenged] conduct once the case has been dismissed." *Pub. Citizen*, 92 F.4th at 1128.

To meet the "stringent" test for demonstrating "mootness in such circumstances," *id.*, a defendant must show that "subsequent events make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (cleaned up) (emphasis added); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2024) (noting that the Supreme Court has described proving mootness via voluntary cessation as a "formidable burden") (citation omitted). The D.C. Circuit has conducted this inquiry in two parts, requiring a defendant to demonstrate (1) that "there is no reasonable expectation that the alleged violation will recur," and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016) (cleaned up). On this record, ICE has not carried its "heavy burden" of proving that the challenged conduct cannot reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 189.

First, ICE's actions since Ms. Bushireddy filed this suit do not make "absolutely clear" that it will not resume the challenged conduct. *Parents Involved*, 551 U.S. at 719. While ICE has reinstated Ms. Bushireddy's SEVIS record and claims to have "no plans to re-terminate" her based on her prior shoplifting charge, Mot. Dismiss 2, it offers no guarantee that it would not terminate her record in future for some other comparable event that is similarly untethered to the appropriate statutory and regulatory bases for termination, *see* 8 C.F.R. § 214.1(d)–(g); *see also Patel*, 2026 WL 587640, at *8. The new policy that ICE implemented by Broadcast Message is not reassuring. *See* ECF No. 20-1. The policy affirms that SEVP can terminate SEVIS records when there is "evidence" that an individual has failed to maintain status but sets no additional guardrails for how the agency makes that determination. *Id.* As a result, it does nothing to prevent ICE from again invoking that basis inappropriately to re-terminate Ms. Bushireddy's record. *Id.* "Moreover, the Broadcast Message explicitly disclaims any student's ability to 'rel[y] upon' it 'to create any right or benefit, substantive or procedural, enforceable at law.'" *Patel*, 2026 WL 587640, at *8 (quoting the Broadcast Message at 2). As other courts in this District have noted, "when [a] revised policy 'disadvantages' the plaintiff 'in the same fundamental way,' there may be serious doubts about whether the promulgation of the new policy has any significant effect on the action." *See Citizens for Resp. & Ethics in Washington v. Wheeler*, 352 F. Supp. 3d 1, 12 (D.D.C. 2019) (quoting *Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 362 (D.C. Cir. 2018)).

Second, ICE's actions have not "completely and irrevocably eradicated the effects of the alleged violation." *Aref*, 833 F.3d at 251. ICE acknowledges that while it has reset Ms. Bushireddy's SEVIS designation to "active," her record will continue to reflect her "prior termination" and subsequent "restoration." ECF No. 45-1. This is because "the event history for a given record cannot be deleted from the system." Hicks Decl. ¶ 3, ECF No. 32-1. ICE also

acknowledges that after it terminated Ms. Bushireddy's SEVIS record, the State Department revoked her F-1 visa. Watson Decl. ¶ 8. Ms. Bushireddy represents that this revocation "remains in place" and that at some point she "will be required to attend a new interview at a consulate" to get a new visa. Pl.'s Opp'n Mot. Dismiss 5.[5]

At bottom, ICE has "fall[en] short of demonstrating that" its challenged conduct cannot reasonably be expected to recur. *Fikre*, 601 U.S. at 242; *see also Patel*, 2026 WL 587640, at *7–8.

---

[5] The Court is outraged by the series of events that unfolded that led to the revocation of thousands of student visas. After conducting the NCIC matching, ICE referred lists to the State Department with a nudge that it review those students' active F-1 visas. Mot. Hr'g 62:2–63:9, 66:8–18; *see also* AR 001, AR 064-065. The State Department then revoked visas for thousands of those students, a decision that is unreviewable by any court. Mot. Hr'g 67:25–68:2, 55:16–21, 28:13–14. Once courts across the country started issuing emergency relief requiring that ICE reinstate the students' SEVIS records, ICE scrambled to undo its unlawful actions and reinstated all SEVIS records terminated as part of its Student Criminal Alien Initiative. Mot. Hr'g 52:2–4. But the State Department apparently took no equivalent actions with respect to visas it revoked as part of this initiative. *See* Pl.'s Opp'n Mot. Dismiss 5.

The impact of this is significant, as students are left in active F-1 status with no active F-1 visa. That means that if they return home during school breaks or to visit a sick family member, they cannot return without obtaining a new student visa. Of course, the process of obtaining a new visa is time consuming and costly. *See* Mot. Hr'g Tr. 27:18–25 ("[Visa] wait times have increased exponentially in the last three months because of staffing issues, and so it's not a situation where she can leave and get a stamping in two weeks anymore."). And given the Government's conduct in this and other cases, international students are understandably nervous about the fairness of that process. *Id.* ("We also have serious concerns [about] whether she'll have a fair chance of getting a visa."); *id.* at 28:4–7 ("We have no reason to think they will give her an honest shot, and with the Doctrine of Consular Nonreviewability there's literally no opportunity for us to get that reviewed."). So students are left with an unenviable choice: never return home during their studies or return home and risk being denied reentry by the same government agency that terminated their visa for an invalid reason. Yet, at an evidentiary hearing, the Government cavalierly downplayed the significance of its alarming conduct:

> MS. GRAHAM-OLIVER: Your Honor, we're not preventing her from going home.
>
> THE COURT: . . . [Y]ou're not preventing her from going home. You're just telling her she can't come back because you took her visa away for an invalid reason?
>
> MS. GRAHAM-OLIVER: We're not telling her that she can't come back either . . . . She has to get another visa.

*Id.* at 24:20–25:3.

So Ms. Bushireddy retains "a legally cognizable interest in the outcome" of this litigation. *Already*, 568 U.S. at 91. In other words, there remains effective relief that the Court can provide Ms. Bushireddy—*i.e.*, injunctive and declaratory relief preventing ICE from terminating her SEVIS record for unlawful and extra-regulatory reasons as it did last year. Pl.'s Mot. Summ. J. 1. Because intervening events have not "secure[d] outside of litigation all the relief" that Ms. Bushireddy can win in this lawsuit, *Fikre*, 601 U.S. at 240, her APA claim is not moot.[6]

### B.  Privacy Act Preclusion

The Government next argues that Ms. Bushireddy seeks relief that is exclusively "provided by the Privacy Act" and thus unavailable under the APA. Mot. Dismiss 17–19. The Court disagrees.

The APA generally waives the federal government's immunity from suits like this one that seek "relief *other than* money damages" and "stat[e] a claim that an agency . . . acted or failed to act in an official capacity or under color of legal authority.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702) (emphasis added). But the APA's waiver of immunity "comes with an important carve-out: The waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief

---

[6] The Government's reliance on *Moharam v. Transportation Security Administration*, 134 F.4th 598, 610 (D.C. Cir. 2025), is misplaced. *See* Mot. Dismiss 14–16. The plaintiff in *Moharam*, who challenged his inclusion on the TSA's No Fly List, "expressly disclaimed seeking . . . declaratory or injunctive relief" and instead sought what the D.C. Circuit deemed to be "nothing more than" a "classic advisory opinion." 134 F.4th at 605. Ms. Bushireddy's requested relief is more like that requested by the plaintiff in *Fikre*, who sought "a declaration that the Government's reliance on particular evidence" in placing him on the No Fly List was legally impermissible and "an injunction against future consideration of such evidence." *Id.* at 606; *see also FBI v. Fikre*, 601 U.S. 234, 239, 242 (2024) ("[T]he government's representation that it will not relist Mr. Fikre based on 'currently available information'" did not "speak[] to whether the government might relist him if he does the same or similar things in the future.").

which is sought' by the plaintiff." *Id*. (quoting 5 U.S.C. § 702). This carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

The Government argues that this carve-out applies to Ms. Bushireddy's APA claim because she seeks relief that the Privacy Act specifically provides, Mot. Dismiss 18; namely, that individuals who identify errors in agency records that pertain to them may request under the Privacy Act that those records be amended, *see All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 87 (D.D.C. 2025) (citing 5 U.S.C. § 552a(d)(2)). But this argument has several flaws.

First, the remedy offered by the Privacy Act is not available to Ms. Bushireddy. As the Government acknowledges, only U.S. citizens and lawful permanent residents may sue under the Privacy Act. *See* Mot. Dismiss 18 (citing 5 U.S.C. § 552a(a)(2)). Ms. Bushireddy, who is an Indian national, may not. Accordingly, Ms. Bushireddy's ability to seek relief under the Privacy Act is not just limited, it is "nonexistent." *Doe v. Noem*, 781 F. Supp. 3d 1055, 1065–66 (E.D. Cal. 2025) (finding Privacy Act did not preclude foreign student's APA claim challenging his SEVIS record termination and collecting cases finding the same); *see also Patel*, 2026 WL 587640, at *6 ("[T]he Privacy Act cannot afford Plaintiff any remedial mechanism, much less an adequate one.").

Second, even if the remedy offered by the Privacy Act were available to Ms. Bushireddy, that remedy "is not addressed to the type of grievance [Ms. Bushireddy] seeks to assert." *Patchak*, 567 U.S. at 216 (cleaned up). In other words, Ms. Bushireddy's claims do not sound in the Privacy Act. Her primary concern is not with the *accuracy* of her SEVIS record but with her actual F-1 *status*. Ms. Bushireddy does not claim that the sole purpose and effect of ICE's termination of her SEVIS record was to temporarily render her SEVIS record inaccurate. Her grievance is that ICE arbitrarily and capriciously terminated her SEVIS record to alter her legal status. Accordingly,

Ms. Bushireddy "asserts a grievance altogether different from the kind the [Privacy Act] concerns" and thus that statute cannot bar her suit. *Patchak*, 567 U.S. at 216.

Finally, the Court is not persuaded that the D.C. Circuit's decision in *Liff v. Office of Inspector General for U.S. Department of Labor* carries the day for the Government. 881 F.3d 912 (D.C. Cir. 2018). While *Liff* did hold that the Privacy Act can provide an "adequate" enough remedial mechanism to "inhibit[] the availability of a *Bivens* remedy," that conclusion has little bearing here. 881 F.3d at 918, 924. There are "unique separation-of-powers concerns" informing *Bivens* jurisprudence—which involves the "judicial implication of new constitutional causes of action"—that are not implicated by "judicial review under the congressionally enacted APA." *Patel*, 2026 WL 587640, at *6. For instance, under *Bivens*, the mere "existence of alternative remedies," *Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017), forecloses relief even if those "existing remedies do not provide complete relief," *Egbert v. Boule*, 596 U.S. 482, 493 (2022) (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). But under the APA, "[a]n alternative remedy will not be adequate under § 704 if the remedy offers only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988)). And the D.C. Circuit has already recognized that APA relief is available for Privacy Acts claims when "the Privacy Act does not by itself authorize the injunctive relief sought" by the plaintiff. *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988). Here, the Privacy Act offers Ms. Bushireddy no relief at all. As the Government acknowledges, she is not a U.S. Citizen or a lawful permanent resident and "is excluded from the [Privacy] Act's exclusive remedial scheme." Mot. Dismiss 19. Ms. Bushireddy may thus proceed under the APA.

15

### C.    Final Agency Action

In a final effort to keep the Court from reaching the merits of Ms. Bushireddy's claim, the Government argues that ICE's termination of a SEVIS record is not "final agency action" subject to APA review. *See* 5 U.S.C. § 704. Like every court to have considered the question, the Court concludes that ICE's termination of a SEVIS record is "final agency action" reviewable under the APA. *Patel*, 2026 WL 587640, at *5 & n.9 (citing 5 U.S.C. § 704 and collecting cases); *see also Zhou v. Lyons*, 25-cv-2994, at 6–8 (C.D. Cal. Nov. 6, 2025), ECF No. 54-1.

Final agency action requires two things. First, the action must "mark the consummation of the agency's decisionmaking process"—*i.e.*, it "must not be of a merely tentative or interlocutory nature." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Second, it must be action "from which legal consequences will flow." *Id.* In other words, "agency action is considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship." *Hormel Foods Corp. v. U.S. Dept. of Agric.*, 808 F. Supp. 2d 234, 243 (D.D.C. 2011) (cleaned up). Ms. Bushireddy establishes both things.

First, ICE's termination of Ms. Bushireddy's SEVIS record was the "consummation of the agency's decisionmaking process." *Hawkes Co.*, 578 U.S. at 597. The thoroughness of that decisionmaking process is questionable—and indeed, the basis for this lawsuit—but it ended with the SEVIS termination. At that point, there was no further agency action to come on the decision. *Patel*, 2026 WL 587640, at *5 ("There [was] no further agency action for [the plaintiff] to invoke or to exhaust." (quoting *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 958 (D.C. Cir. 2019) (cleaned up)). ICE's decision was not "merely tentative or interlocutory." *Hawkes Co.* 578 U.S. at 597.

Second, ICE's termination was plainly an action "from which legal consequences [] flow." *Hawkes Co.*, 578 U.S. at 597. Termination of a student's SEVIS record requires them to leave the country immediately. *Patel*, 2026 WL 587640, at *6 (citing 8 U.S.C. § 1184(a)(1)); 8 C.F.R. § 214.2(f)(5)(iv) ("[A]n F-1 student who . . . fails to maintain status is not eligible for an additional period [to prepare] for departure.")) And DHS's website advises that students whose SEVIS records are terminated for failure to maintain status lose their employment authorization and may be investigated by ICE to confirm their departure. *See* Dep't of Homeland Sec., *Terminate a Student* (May 19, 2025), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student [https://perma.cc/2TLM-9385] (cited in Compl. ¶ 34). These are clear legal consequences that affected Ms. Bushireddy's "rights or obligations," *Patel*, 2026 WL 587640, at *6 (quoting *Bennett*, 520 U.S. at 178), confirming that ICE's termination was final agency action subject to APA review.

The Government attempts to avoid this conclusion by arguing that its termination of Ms. Bushireddy's SEVIS *record* did not terminate her nonimmigrant *status*. Mot. Dismiss 20–21. A termination of F-1 status, the Government maintains, can generally only be carried out by an immigration judge or by the U.S. Citizenship and Immigration Services. *Id.* at 20. According to the Government, ICE's termination of Ms. Bushireddy's SEVIS record did not change that Ms. Bushireddy was still "lawfully present in the United States." *Id.* at 20–21.

This argument finds no support in the record before this Court. The reason that ICE provided the University of Texas for terminating Ms. Bushireddy's SEVIS record was that she had "OTHERWISE FAIL[ED] TO MAINTAIN STATUS." Pl.'s App'x at 6. DHS's website says that "[t]ermination for any violation of status" requires that a "student must either apply for reinstatement" or "leave the United States immediately."

17

| Termination Reason | Duration of Status |
| --- | --- |
| **Termination for any violation of status** | <ul><li>**No grace period.**</li><li>If the student and dependents are still in the United States, the student must either apply for reinstatement, or the student and dependents must leave the United States immediately.</li></ul> |

*See* Compl. at 1. "And the Government's own Foreign Affairs manual—which bills itself [as] the 'authoritative source' on the State Department's and other agencies' policies—confirms that SEVIS represents 'the definitive record of student . . . status.'" *Patel*, 2026 WL 587640, at *6 (citation omitted). Not to mention, if termination in SEVIS has no impact on a student's immigration status, why did ICE conduct the mass terminations of SEVIS records that resulted in this lawsuit and so many others? Throughout this lawsuit, the Court has given the Government ample opportunities to address these inconsistencies. At one point, the Government claimed that the information on DHS's website about the consequences of SEVIS record termination was wrong, but then said it could be correct, Mot. Hr'g Tr. 18:20–20:23. That information remains on the website even today. All in all, the Government's argument that no legal consequences flow from SEVIS termination is neither plausible nor supported by the record.

Accordingly, ICE's termination of Ms. Bushireddy's SEVIS record is final agency action that is subject to APA review.

### D.    Arbitrary and Capricious

Having found that Ms. Bushireddy's APA claim is susceptible to review, "the Court has no trouble concluding" that it is meritorious. *Patel*, 2026 WL 587640, at *9. Having reviewed the administrative record, which consists of a handful of emails and several pages of a redacted spreadsheet, AR 001–065, it could not be clearer that ICE's termination of Ms. Bushireddy's SEVIS record was arbitrary and capricious.

18

"The APA requires a reviewing court to 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Henry*, 266 F. Supp. 3d at 86 (quoting 5 U.S.C. § 706(2)). "An agency action is arbitrary and capricious if the agency has . . . 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Evergreen Shipping Agency (Am.) Corp. v. Fed. Mar. Comm'n*, 106 F.4th 1113, 1117 (D.C. Cir. 2024) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). While a court may not "substitute its judgment for that of the agency," it must set aside agency actions where the agency "relied on factors which Congress has not intended it to consider." *Id.*

Here, ICE does not dispute that it terminated Ms. Bushireddy's SEVIS record because it interpreted her appearance in the NCIC database as a failure to maintain her F-1 status. Mot. Dismiss 20–21. But Ms. Bushireddy's dismissed shoplifting charge is far from the type of "criminal activity" that constitutes a failure to maintain status. *See* 8 C.F.R. § 214.1(g). It was not a "conviction." *Id.* It was not a "crime of violence." *Id.* And it was not an offense that was punishable by "more than one year imprisonment." *Id.* What is more, all of this was plainly evident in the spreadsheet entry describing Ms. Bushireddy's "criminal record" that was the apparent basis for the agency's action. AR 028. That entry made clear that Ms. Bushireddy was charged only with a misdemeanor under Texas Penal Code § 31.03(e)(2)(A), and, more importantly, it noted in all capital letters that the charge was "DISMISSED." *Id.*

ICE has offered no "satisfactory explanation" for how it looked at these facts and reasonably determined that termination of Ms. Bushireddy's SEVIS record was warranted. *See State Farm*, 463 U.S. at 43. Nor does ICE's determination seem merely to be a decision of "less than ideal clarity" from which a permissible rationale "may reasonably be discerned." *Id*. There is simply nothing in the record to support that Ms. Bushireddy engaged in any activity that constituted a failure to maintain her status and thus justified termination of her SEVIS record. *See* 8 U.S.C. § 214.1(d)–(f) (providing that individuals may fail to "maintain nonimmigrant status" if they engage in unauthorized employment or provide false information to DHS).

Accordingly, ICE's termination of Ms. Bushireddy's SEVIS record was arbitrary and capricious and must be set aside. Because this determination fully disposes of this case, the Court need not reach Ms. Bushireddy's alternative *ultra vires* and constitutional due process claims. *See Patel*, 2026 WL 587640, at *9 (citing *Qassim v. Trump*, 927 F.3d 522, 530 (D.C. Cir. 2019)).

## CONCLUSION

For these reasons, the Court grants Ms. Bushireddy's Motion for Summary Judgment, ECF No. 39, and enjoins the Government from terminating Ms. Bushireddy's SEVIS record for any reason other than those contained in statute or regulation. The Court denies the Government's Motion to Dismiss, ECF No. 41.

A separate order will issue.

                                              _____

                                              SPARKLE L. SOOKNANAN
                                              United States District Judge

Date:   March 18, 2026

20